## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**JOSE CABALLERO GUTIERREZ, RAMIRO LOPEZ
CEDILLO, and JOEL SIERRA DELCID**

        Petitioner,

v.                                                              Case No. 2:25-cv-001145-WJ-KRS

**JOEL GARCIA,** Field Office Director of
Enforcement and Removal Operations, El Paso
Field Office, Immigration and Customs
Enforcement; **KRISTI NOEM**, Secretary, U.S.
Department of Homeland Security; **U.S.
DEPARTMENT OF HOMELAND SECURITY**;
**PAMELA BONDI**, U.S. Attorney General;
**TODD LYONS**, Acting Director and Senior
Official Performing the Duties of the Director
of U.S. Immigration and Customs Enforcement;
**GEORGE DEDOS**, Warden of Cibola County
Correctional Center; in their official capacities,

        Respondents.

### MEMORANDUM OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AS TO BOND HEARING

THIS MATTER comes before the Court upon Petitioners Ramiro Lopez Cedillo's and Joel Sierra Delcid's (together, "Petitioners")[1] Petition for Writ of Habeas Corpus, 28 U.S.C. § 2241. Petitioner Lopez Cedillo, a citizen of Mexico, and Sierra Delcid, a citizen of Honduras, have resided in the United States without legal status since 2007 and 2010, respectively. Petitioners were apprehended in Florida, transferred to federal immigration custody, and are presently detained at Cibola County Correctional Center in New Mexico pending removal proceedings. Petitioners request habeas relief in the form of release on their own recognizance or, in the

---

[1]Pursuant to Petitioners' unopposed motion, Petitioner Jose Caballero Gutierrez has been dismissed from this action. [*See* **Docs. 20, 22**].

1

alternative, bond hearings before this Court pursuant to 8 U.S.C. § 1226(a).

As set forth below, the Court GRANTS the Petition for Writ of Habeas Corpus and ORDERS Respondents to provide Petitioners with bond hearings before an immigration judge.

Upon review of the record, the Court concludes that a hearing before this Court would not aid the resolution of the Petition. Accordingly, Petitioner's Motion for a Hearing **[Doc. 18]** will be DENIED. *See* D.N.M. LR-Civ. 7.6(a).

## BACKGROUND

On or about July 15, 2025, Petitioner Lopez Cedillo was arrested by local law enforcement in Florida for driving without a license. **[Docs. 1 at 13 ¶ 51; 15 at 3]**. A few days later, he was remanded into ICE custody and charged with being a noncitizen[2] present in the United States without admission or parole under 8 U.S.C. § 1182(a)(6)(A)(i) and, who, at the time of application for admission, lacked valid entry documentation under § 1182(a)(7)(A)(i)(I). **[Doc. 15 at 3]**.

On or about August 6, 2025, Petitioner Sierra Delcid was detained by Florida Highway Patrol during a traffic stop. **[Docs. 1 at 15 ¶ 57; 15 at 4; 15-6 at 3]**. Tampa Border Patrol agents arrived at the scene and conducted a records check, which showed Petitioner Sierra Delcid lacked legal authorization "to enter or remain in the United States legally." **[Doc. 15-6 at 3]**. Petitioner Sierra Delcid was arrested and transported to the Tampa Border Patrol station. **[*Id.*]** He was then remanded to ICE custody and charged with being a noncitizen present in the United States without admission or parole under 8 U.S.C. § 1182(a)(6)(A)(i).

Petitioner Sierra Delcid was denied bond by an immigration judge, who denied jurisdiction "due to manner of entry" because Petitioner "entered the US in 2010 without inspection." **[Docs. 16 at 5–6; 16-8]**. Two immigration judges have denied bond as to Petitioner Lopez Cedillo,

---

[2] This Memorandum Opinion and Order "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3))

likewise asserting lack of jurisdiction. **[Docs. 16 at 4–5; 16-5; 16-11]**. Each Petitioner has thus been detained without an opportunity for meaningful bond consideration pursuant to the Executive Branch's recent interpretation of 8 U.S.C. § 1225, which eliminates bond eligibility for noncitizens who have not been lawfully admitted, regardless of their length of residence in the United States at the time of their placement in immigration custody. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA Sep. 5, 2025); *ICE Memo: Interim Guidance Regarding Detention Authority for Applicants for Admission* (July 8, 2025)*, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited, Feb. 3, 2026); **[Doc. 15 at 2]**.

## DISCUSSION

For the reasons that follow, the Court determines that interpreting § 1225 to mandate the detention of noncitizens like Petitioners is incorrect as a matter of law. Instead, noncitizens, like Petitioners, who are apprehended within the interior of the United States after residing in the country for some time, are properly classified under § 1226(a). Individuals detained under § 1226(a) are entitled to meaningful custody determination pursuant to the discretionary detention framework set forth in the INA and its implementing regulations. Therefore, the Court holds that Petitioners are entitled to bond hearings before a neutral immigration judge.

## I.    This Court Exercises Habeas Jurisdiction

The Court's jurisdiction is uncontested by Respondents. Nonetheless, a district court has an independent duty to assess its jurisdiction before turning to the merits of a § 2241 petition. *See Palma-Salaza v. Davis*, 677 F.3d 1031, 1038 n.3 (10th Cir. 2012). District courts are authorized to entertain petitions for habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). Petitioners are detained within New Mexico and name Respondent Dedos, the

warden of Cibola County Correctional Center, the facility in which they are detained. *See*

*Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) (holding that, in *Ex Parte Endo*, 542 U.S. 426,

441 (2004), an immigration-related habeas case, the district court "acquired jurisdiction . . .

because Endo properly named her immediate custodian and filed in the district of

confinement."). Because Petitioners are confined within this district and have named their

immediate custodian, this Court properly exercises habeas jurisdiction.

Additionally, § 2241 empowers district courts to entertain habeas petitions challenging the

lawfulness of detention under the federal immigration laws and the United States Constitution. 8

U.S.C. § 2241(c)(3); *Rasul v. Bush*, 542 U.S. 466, 483 (2004). Petitioners challenge the legality

of their continued detention without bond under the Immigration and Nationality Act and the

Fifth Amendment. **[Doc. 1 at 16–18]**. Therefore, this Court has subject matter jurisdiction under

28 U.S.C. § 2241.

## II.    Governing Detention Authority

Broadly speaking, federal immigration law vests the Attorney General with two primary

sources of authority to detain noncitizens pending a decision on removability: 8 U.S.C. § 1225

and § 1226. The distinction between these provisions matters here because each establishes

materially different detention regimes and affords materially different procedural protections.

Section 1226 governs the detention of noncitizens who are already present in the United

States and are placed in removal proceedings. *See Jennings v. Rodriguez*, 583 U.S. 281, 303

(2018) ("[Section] 1226 applies to [noncitizens] already present in the United States" and

"creates a default rule for those aliens."); 8 U.S.C. § 1226(a). With the exception of certain

narrowly defined provisions requiring detention of individuals with specified criminal history,

§ 1226 permits the Attorney General to detain noncitizens pending a decision on removability or

4

to release them on bond or conditional parole.  *See* 8 U.S.C. § 1226(a)(2)(A)–(B); § 1226(c)(1)–(4); *Jennings*, 583 U.S. at 303 ("1226(a) . . . permit[s] . . . but [does] not requir[e] . . . the Attorney General to issue warrants for [the] arrest and detention [of]" noncitizens already present in the United States; "Section 1226(a) also permits the Attorney General to release those [noncitizens] on bond[.]").

Section 1225, by contrast, governs the inspection and detention of certain "arriving aliens" and other noncitizens seeking admission to the United States.  *See, e.g.*, §§ 1225(b)(1), (b)(2)(A). Under § 1225(b), detention is generally mandatory and does not permit release on bond or parole, subject to limited statutory exceptions.  *See* 8 U.S.C. §§ 1225(b)(1)(B)(iii)(IV), (b)(2)(A).

Because the availability of release on bond turns entirely on which statutory provision governs detention, the threshold question in this case is whether Petitioners are detained pursuant to § 1225(b) or § 1226(a).

### A.  Petitioners Are Detained Pursuant to 8 U.S.C. § 1226(a)

Respondents assert that Petitioners' detention is required by § 1225(b)(2)(A) and that they are therefore ineligible for bond hearings.  **[Doc. 15 at 9–13]**.  Petitioners maintain that their detention is instead properly classified under § 1226(a), and, accordingly, they are entitled to bond hearings.  **[Doc. 16 at 7–10]**.  In line with other courts in this District and the overwhelming majority of courts across jurisdictions, the Court agrees with Petitioners.  *See Melchor-Rios v. Ortiz*, No. 2:25-cv-01055, 2025 WL 3764775, at *2 (D.N.M. Dec. 30, 2025).

When read within the context of the statutory and regulatory scheme governing immigration detention, it is clear that § 1225(b)(2)(A) applies in circumstances not present here — namely, to the inspection and detention of individuals seeking admission at or near the border.  *See Tanchez v. Noem*, No. 2:25-cv-1150, 2026 WL 125184, at *7 (D. Utah Jan. 16, 2026) ("§ 1225 applies to

noncitizens at or near the border who are entering or who have recently entered[.]").  Within that context, properly understood, Petitioners — who have lived in the United States for 15 and 18 years — and were apprehended in the interior of the United States, are not subject to detention under § 1225(b)(2)(A).

The Court examines first the plain text of the relevant statutory text.  Section 1225(b)(2)(A) applies to "inspection of other aliens," § 1225(b)(2)(A), and provides, in full:

> Subject to subparagraphs (B) and (C), in the case of a[] [noncitizen] who is an applicant for admission, if the examining immigration officer determines that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding under Section 1229a of this title.

The threshold question, then, is the scope of the detention authority Congress conferred by § 1225(b)(2)(A).

Respondents assert that the clear statutory language mandates detention of any noncitizen present in the United States, "regardless of the duration of the [noncitizen]'s presence in the United States or the alien's distance from the border."  **[Doc. 15 at 10]**.  Relying on § 1225(a)'s definition of "applicant for admission," which comprehends a noncitizen who either "arrives in the United States" or who is "present in the United States who has not been admitted," Respondents argue that any citizen who is present in the United States without lawful status, qualifies as an "applicant for admission."  **[*Id.* at 9–10]**.

This argument finds some support in the text of the INA.  8 U.S.C. § 1101(a)(13)(A) defines "admitted" as "the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer."  On Respondents' view, a noncitizen present in the United States who, at one time, entered the United States without inspection and authorization could qualify as an "applicant for admission."  However, even granting, ad arguendo, that the statutory definition of applicant for admission encompasses noncitizens present in the United

6

States who entered without inspection or authorization, section 1225(b)(2)(A), by its terms, authorizes an immigration officer to detain a noncitizen who is not admitted, only if that noncitizen is "seeking admission."

Respondents understand "applying" to necessarily imply seeking, such that an applicant for admission is also one seeking to be admitted.  **[Doc. 15 at 10 n.5]**.  By that token, Respondents assert that § 1225(b)(2)(A) authorizes — indeed, requires — the detention of noncitizens present in the United States who have not been lawfully admitted.  In support, Respondents argue that, in common linguistic usage, to "apply" necessarily means "to seek."  **[*See id.*]**.  Respondents are correct that, in one context, the word, "apply," is used to mean seek, as in, to seek a certain benefit, such as employment or admission.  *See* American Heritage Dictionary of the English Language 87 (4th ed. 2006) (among other definitions, "apply" may mean "[t]o request or seek assistance, employment, or admission").

But the statute does not turn on ordinary usage alone.  Rather, it turns on how Congress used the phrase "seeking admission" within the INA's detention framework.  Viewed through that lens, Respondents' interpretation would stretch the text of § 1225 beyond its plain language and collapse the distinction Congress established between discretionary detention under § 1226 and mandatory detention under § 1225.

Returning to the text of § 1225(b)(2)(A), the provision attaches only if the noncitizen subject to inspection qualifies both as an applicant for admission and as seeking admission.  If Congress intended "seeking admission" to bear an identical meaning to "applicant for admission" it need not have included both phrases.  Generally, when subject to competing interpretations, statutory language is not interpreted to include redundancies.  *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 574 (1995).  This longstanding canon of statutory interpretation counsels against interpreting

"applicant for admission" as coterminous with "seeking admission" within the meaning of the mandatory detention framework set forth in § 1225.

Moreover, the Laken Riley Act, Pub. L. 119-1, 139 Stat. 3 (2025), recently amended section 1226's mandatory detention provision, § 1226(c), to require detention of individuals who are inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), as being present without admission or parole, *and* are charged with, arrested for, convicted of, or have admitted to committing certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E).  Interpreting § 1225(b)(2)(A) to require detention of "*all* noncitizens who have not been admitted," regardless of criminal status, would render this amendment meaningless. *Elias v. Knight*, No. 1:25-cv-00594, 2025 WL 3228262, at *6 (D. Idaho Nov. 19, 2025).

Further, the statue's use of the active, present-tense verb forms "seeking" and "examining" reflects Congress's focus on detention during the pendency of the inspection process rather than on continued detention after that process has concluded. *Cortez-Gonzalez v. Noem*, ---F. Supp.----, 2025 WL 3485771, at *4  (D.N.M. Dec. 4, 2025) ("The active construction of 'the phrase "seeking admission" necessarily implies some sort of present-tense action.'") (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025))).  The phrase describes a current legal posture — participation in inspection and admissibility determinations — rather than a generalized or enduring objective to enter the United States. *See Tanchez*, 2026 WL 125184, at *8 ("These active verbs suggest a moment in time when a noncitizen is crossing or has recently crossed a border, not an indefinite status that applies whenever a noncitizen charged with inadmissibility encounters an immigration official.").

The surrounding provisions of § 1225 reinforce this reading.  Section 1225(b)(2) appears within a statutory section governing the inspection of noncitizens at or near the border, and its

neighboring provisions repeatedly reference noncitizens who are arriving in the United States or undergoing initial admissibility determinations. *See, e.g.*, § 1225(b)(1) (entitled "*Inspection* of [noncitizens] *arriving* in the United States and certain other aliens who have not been admitted or paroled") (emphasis added); § 1225(b)(2)(c) (providing a procedure for noncitizens "arriving on land . . . from a foreign territory contiguous to the United States."); § 1225(b)(2)(B) (providing an exception for noncitizens who are members of a ship crew or "stowaway[s]"). An understanding that § 1225 is limited spatially and temporally to noncitizens arriving or recently arrived at the border is also reflected in the section's title, "Inspection by immigration officers; expedited removal by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225 (title); *Mendoza Gutierrez v. Baltasar*, No. 25-cv-2720, 2025 WL 2962908, at *6 (D. Colo. Oct. 17, 2025) (finding that section 1225's title indicates congressional intent for the section to "apply to inspections that occur at the ports of entry or near the border"); *see also Dubin v. United States*, 599 U.S. 110, 120–21 (2023) (a statute's title and a section's heading are viable tools of statutory construction). Read as a whole, § 1225 is cabined both spatially and temporally to the inspection process.

Section 1225 thus applies to noncitizens who are placed in the statutory process for admission, including inspection and admissibility determinations at the border or port of entry. By contrast, § 1226 governs detention once a noncitizen has been placed in removal proceedings, regardless of whether the noncitizen may still be understood, in statutory terms, to be an applicant for admission. The undisputed facts demonstrate that Petitioners have resided in the United States for a substantial period of time prior to their apprehension and placement in removal proceedings. They are not individuals apprehended at or near the border, nor are they properly characterized as arriving aliens within the meaning of § 1225(b). Thus, they cannot be

said to be "seeking admission" to the United States so as to justify their detention under

§ 1225(b)(2)(A).

Courts across jurisdictions have consistently rejected the proposition that current residents of

the United States may be retroactively reclassified as arriving aliens for purposes of mandatory

detention under § 1225(b). *See, e.g.*, *Castañon-Nava v. DHS*, 161 F.4th 1048, 1061–62 (7th Cir.

2025); *Requejo Roman v. Castro*, --- F. Supp. 3d ----, 2026 WL 125681, at *5 (D.N.M. Jan. 12,

2026); *Tanchez*, 2026 WL 125184, at *5–16; *Luna v. Warden*, No. 25-cv-565, 2025 WL 3787494,

at *8–11 (W.D. Tex. Dec. 29, 2025); *Falcon v. Florentino*, No. 25-17164, 2025 WL 3677578, at

*2–3 (D.N.J. Dec. 18, 2025); *Chavez v. Director of Detroit Field Office*, No. 4:25-cv-02061,

2025 WL 2959617, at *7 (N.D. Ohio Oct. 20, 2025), *report and recommendation adopted*, 2025

WL 3187080 (Nov. 14, 2025).  The decisions of a limited minority of courts that have endorsed

Respondents' interpretation of § 1225, **[***see*** Doc. 15 at 12],** does not change the Court's

conclusion, which rests on the plain language of the relevant statutory text as properly

understood within the mandatory and discretionary detention framework codified in the INA and

implementing regulations.

Apart from § 1225(b)(2), Respondents identify no statutory authority that would require

Petitioners' continued detention without the possibility of bond.  Respondents do not

persuasively argue that § 1225 is intended to apply retroactively to any noncitizen who entered

the United States without admission or inspection irrespective of when entry was made.

Therefore, the Court concludes that § 1226(a) governs Petitioners' detention.

## III.    The Appropriate Habeas Relief is a Bond Hearing Before an Immigration Judge

Having established that Petitioners are detained pursuant to § 1226(a), the question becomes

what process is due.  That question is answered by the statutory and regulatory framework

10

governing discretionary detention under § 1226(a), which provides for an individualized bond hearing before an immigration judge. *See Velasquez Salazar v. Dedos*, No. 1:25-cv-835, 2025 WL 2676729, at *5 (D.N.M. Sep. 17, 2025) ("Because . . . § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ.").

Section 1226(a) authorizes detention pending removal proceedings but expressly permits release on bond or conditional parole. 8 U.S.C. § 1226(a). The Attorney General has implemented this discretionary detention authority through binding regulations that provide for custody determinations by immigration judges. *See* 8 C.F.R. §§ 236.1(d); 1236.1(d); 1003.19. Under those regulations, a noncitizen detained pursuant to § 1226(a) is entitled to an individualized custody determination before a neutral immigration judge. This regulatory scheme reflects the Executive's judgment as to how discretionary detention authority should be exercised and reviewed. Where detention is authorized only through such a discretionary scheme, continued detention without affording the custody determination required by regulation exceeds the authority conferred by statute.

This conclusion is bolstered by DHS's decades-long practice of administering discretionary detention under § 1226(a) on the understanding that noncitizens are entitled to an individualized custody determination before an immigration judge pursuant to 8 C.F.R. §§ 236.1(d), 1236.1(d); 1003.19. *See Tanchez*, 2026 WL 125184, at *12 (discussing "DHS's longstanding practice" of administering bond hearings for noncitizens present in the United States who have not been admitted and finding that record "more persuasive" than the agency's recent interim guidance). That approach, adhered to until recently, is reflected in an interim rule issued shortly after the passage of the Illegal Immigration Reform and Immigrant Responsibility Act (1996) by the

agencies then charged with enforcing federal immigration law, in which the agencies explained that:

> Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination . . . . The effect of this change is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not.

62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).  Consistent with that guidance, immigration judges have routinely conducted bond hearings for individuals like Petitioners as a matter of agency practice, and the Government has defended detention decisions in federal court on that same premise.

Petitioners were erroneously classified as subject to mandatory detention under § 1225(b) and, as a result, were denied the custody determinations contemplated by § 1226(a) and its implementing regulations.  That misclassification has resulted in Petitioners' continued detention without the process prescribed by law.  This violation violates Petitioners' rights under the INA and warrants habeas relief.  28 U.S.C. § 2241(c)(3).

As discussed above, the governing discretionary detention framework requires an individualized bond hearing before an immigration judge.  Petitioners further argue that additional process is warranted, urging that this Court should conduct the bond hearing itself and that, at any such hearing, the Government should bear the burden of proof to justify continued detention.  **[Docs. 1 at 18; 16 at 11–12]**.  Petitioners' argument regarding burden-shifting was raised for the first time in reply and is therefore likely forfeited.  *SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009) (noting the general rule in the Tenth Circuit that a party waives "issues and arguments raised [in a reply brief] for the first time").

Even assuming Petitioners had preserved an argument for additional constitutional process,

the Tenth Circuit has not addressed what standard governs whether the Constitution mandates additional process beyond that provided by statute in the immigration detention context. Some courts, in analogous circumstances, have applied the balancing test articulated in *Mathews v. Eldridge*, 429 U.S. 319, 341–47 (1976). *See, e.g.*, *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1181 (D. Colo. 2024). The Court need not resolve that question here. Having concluded that Petitioners are detained pursuant to § 1226(a) and were erroneously denied the individualized custody determinations required by statute and regulation, the relief ordered below fully remedies the statutory violation.[3] Accordingly, the appropriate habeas relief is an order requiring Respondents to provide Petitioners with prompt individualized bond hearings before an immigration judge.[4]

In support of their argument that any bond hearing should be held before this Court, Petitioners cite the immigration court decisions denying bond as to Petitioners and a finding by the United States District Court for the Central District of California that certain immigration courts in its jurisdiction had disregarded court-ordered class-wide habeas relief directing bond hearings. *See* **[Doc. 16 at 11** (citing **Ex. 3 at 8-9** (Civil Minutes, *Maldonado Bautista v. Santacruz Jr.*, No. 5:25-cv-01873 (C.D. Cal. Dec. 18, 2025))); **Ex. 5** (Doc. 16–5)**; Ex. 8** (Doc. 16-8)**]**. Petitioners also note that at least one other district court has ordered a bond hearing in the district court under analogous circumstances. Order, *Jimenez v. FCI Berlin, Warden*, No. 25-cv-326 (D.N.H. Sep. 8, 2025). Here, however, the Court concludes that the process

---

[3] Section 1226(a) is silent as to who bears the burden of proof at a bond hearing. *See Basri v. Barr*, 469 F. Supp. 3d 1063, 1073 (D. Colo. 2020) (holding that Section 1226(a) does not require that the government bear the burden of proof to justify continued detention) (citing *Jennings*, 583 U.S. at 306). In the pre-removal detention context, federal regulation and BIA precedent suggest the burden is ordinarily on the noncitizen to justify release. 8 C.F.R. § 236.1(c)(8); *In re Adeniji*, 22 I&N Dec. 1102, 1116 (BIA 1999). In the absence of a statutory mandate or binding precedent requiring burden shifting, the Court declines to specify or alter the burden of proof at this stage.
[4] Because the Court grants relief that fully remedies the statutory violation identified and resolves Petitioners' detention claim, the Court declines to issue additional declaratory relief.

13

ordered — including a status report certifying compliance — is appropriate in light of the statutory violation that has occurred. Absent evidence demonstrating a likelihood of noncompliance with this Court's order, the Court does not find it necessary to hold a hearing itself in the first instance.

**IV.    The Court Preserves Jurisdiction Until a Custody Determination Has Occurred**

Petitioners request the additional relief of an order preventing their removal from New Mexico or the United States while this proceeding is pending. Respondents do not oppose the grant of this relief in their response to the Petition. Federal courts possess inherent authority and authority under the All Writs Act, to issue orders where necessary or appropriate to protect their jurisdiction. *See* 28 U.S.C. § 1651(a); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991) (recognizing the "control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–631 (1962)). Because removal could moot the Petition and transfer could frustrate the Court's ability to effectuate habeas relief, limited ancillary relief is warranted. The Court therefore grants an order in aid of jurisdiction to the extent necessary to ensure that its habeas relief is not rendered ineffectual.

**ORDER**

It is ORDERED that:

- The Petition for Writ of Habeas Corpus **[Doc. 1]** is GRANTED to the extent set forth in this Memorandum Opinion and Order.

- Respondents SHALL, within **ten (10) days**, provide Petitioners Sierra Delcid and Lopez Cedillo with individual bond hearings before an immigration judge under the appropriate statutory and regulatory framework. Pursuant to this Memorandum

14

Opinion and Order, bond shall not be denied on the ground that Petitioners are detained under 8 U.S.C. § 1225.

- Within **three (3) days of any bond hearing**, Respondents SHALL certify compliance with this Order by filing a **status report** with the Court, including if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.

- Respondents shall NOT remove Petitioner Sierra Delcid or Petitioner Lopez Cedillo from the United States or transfer them outside the District of New Mexico until the ordered custody determination has occurred.

- The Motion for a Hearing on the Petition for Writ of Habeas Corpus **[Doc. 18]** is DENIED.


IT IS SO ORDERED.

/s/ _____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE